IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOSE GREGORIO CASTRO ALONZO, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | No. 5:25-CV-01482-DAE |
| v. | § | |
| | § | |
| UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO; AND UNIVERSITY OF TEXAS SYSTEM | § | |
| | § | |
| *Defendants*. | § | |

ORDER GRANTING MOTION TO DISMISS

Before the Court is Defendant University of Texas Health Science Center at San Antonio's ("UTHSCSA") Motion to Dismiss (Dkt. # 10) Dr. Jose Gregorio Castro Alonzo's ("Dr. Castro" or "Plaintiff").[1] After careful

[1] At the outset, the Court reminds Plaintiff's counsel of its ethical and legal obligations to both the Court and Plaintiff. On September 2, 2026, during the pendency of this Motion, the Court noticed on its own accord that Plaintiff had appeared to file his Response pro se. It subsequently issued an Order to Show Cause. (Dkt. # 14.) In response, Plaintiff's original counsel of record, Dolores Bojazi, stated that she had been involved with writing the complaint but had no further involvement with the case after her separation from LLG National Law Group. (Id.) Nonetheless, the Court received neither a Motion to Withdraw from Attorney Bojazi nor a Notice of Substitution of Counsel from *any* attorney affiliated with LLG National Law Group. On September 8, 2026, after a subsequent Order to Show Cause, addressed to "both Plaintiff and his counsel (whoever they may currently be)," the Court inquired as to why no attorney had entered an appearance after Attorney Bojazi's departure from both LLG National Law Group and this case (again, without having sought this Court's leave) or sought the Court's leave to substitute counsel. (See Dkt. # 18.) The

answer provided by Attorney Robert Mactavish of LLG National Law Group shows no contrition. (Dkt. # 20.) The Court is aware—and very sympathetic to the fact—that "life" (and mistakes) happen. Attorney Bojazi expressed remorse to the Court. (See Dkt. # 15.) For that, the Court is grateful. Attorney Mactavish and LLG National, however, attribute the failure to appear as happenstance—"undersigned counsel was inadvertently not assigned to this case until Friday, September 4, 2026." (Dkt. # 20 at 2.) And, even if it is true that "today [September 8, 2026,] . . . represents the first available opportunity for undersigned counsel to file . . . pleadings" or otherwise appear in this case, the same is not true of LLG National Law Group. (Id. at 2–3.) This is so because the firm was actually aware of the fact that Attorney Bojazi (and any/all other counsel involved in litigation at the time of their separation) needed to seek leave to withdraw and/or have the firm do so on her behalf at least eight months earlier.

What is more, Attorney Mactavish indicated that the LLG National Law Group assisted Plaintiff by drafting this pleading, mailing it into the Clerk of Court, and mailing a copy to assigned counsel. (Id. at 1.) It is neither here nor there that the quality of the pleading is below that of many of the *unassisted pro se* litigants that this Court sees. (Cf. Dkt. # 11.) In any event, the Court reminds Attorney Mactavish and LLG National Law Group that "there is no constitutional right to hybrid representations whereby the defendant and his attorney act as co-counsel." United States v. Long, 597 F.3d 720, 724 (5th Cir. 2010); see also Posner v. Dallas Cty. Child Welfare Unit of Tex. Dep't of Human Servs., 784 S.W.2d 585, 588 (Tex. App.—Eastland 1990, writ denied) (holding that, in Texas, "in civil cases as in criminal cases, there is no "entitle[ment] to hybrid representation"); McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004) (holding that a civil litigant "has a right to represent himself or to be represented by an attorney, but he cannot have it both ways. There is no right to hybrid representation in the federal courts"). Accordingly, were Plaintiff to have filed the Motion on his own accord, LLG National Law Group would have had to first obtain leave from this Court that allowed it to discontinue its representation of Dr. Castro.

Although the Court will not recommend formal sanctions for any attorney or law firm at this time, it notes that Dr. Castro, and at the very least this Court, deserves better from counsel.

consideration of the filings and relevant case law, the Court **GRANTS** Defendants' Motion to Dismiss.[2]

## BACKGROUND

The Court will recite this case's procedural history, factual claims, and legal allegations in turn.

### I. Procedural History

On November 14, 2025, Plaintiff filed his Complaint in this Court. (Dkt. # 1.) Then, on December 3, 2025, Plaintiff Amended his Complaint of right. (Dkt. # 3 ("First Amended Complaint" or "FAC").) On January 23, 2026, Defendants filed their Motion to Dismiss (Dkt. # 10). Plaintiff then filed his Response in Opposition (Dkt. # 11). And Defendants replied. (Dkt. # 12).

### II. Factual Allegations

Plaintiff is a Medical Doctor who began a residency program at UTHSCSA in anesthesiology on or about July 1, 2023. (Dkt. # 3 at ¶ 10–12.) Defndant is a part of the University of Texas system that Plaintiff alleges "accepts and receives financial aid from the [federal] government" for a variety of purposes. (Id. at ¶ 40.) At their core, Plaintiff's allegations charge that various attending, supervising or other physicians involved with the anesthesiology residency program retaliated against him for comments that he

[2] As Defendant observes, the University of Texas has not been served. (See Dkt. # 12 at 1 n.1.) A summons issued for UTHSCSA but not for the University of Texas System. (Dkt # 8.) Accordingly, this order binds only the parties before the court: Dr. Castro and UTHSCSA.

made about the dearth of Hispanic residents in UTHSCSA's program. (See id. at ¶¶ 13–36). Throughout the FAC, Dr. Castro invokes an alleged January 8, 2025, "group meeting" at which he "raised concerns regarding faculty harassment, a toxic learning environment, and a pattern of punitive behavior as described in a recent survey." (Id. at ¶ 21.)[3]

Two weeks into his anesthesiology program, Dr. Castro claims that he struggled to provide adequate care to a patient during a surgical procedure. (Id. at ¶ 13.) He alleges that this situation materialized due to a lack of supervision from the attending physician, Dr. Sabrina Bent. (Id.) And, shortly after the incident, he alleges that he contacted Dr. Manohar, the residency program's director, for guidance. (Id.)[4]

Then, in March 2024, Plaintiff alleges that he "received an administrative status letter indicating that while he had two areas of deficiency, the Clinical Competence Committee had noted an improvement in his performance in the ACGME core competencies of practice-based learning and improvement, as well as interpersonal and communication skills." (Id. at ¶ 14.) A month later, Plaintiff alleges that Dr. Bent gave him a poor performance

---

[3] It is unclear to the Court whether these comments were the same as the comments that purportedly "raised concerns regarding the low admission of Hispanic residents" at UTHSCSA. (See id. at ¶¶ 44–45, 50, 59–60, 116, 146.) It understands them to be one in the same.

[4] Plaintiff does not plead any other information about Dr. Manohar other than their first name.

evaluation. (Id. at ¶ 15.) The focus of Dr. Bent's evaluation, Plaintiff contends, "erroneously asserted Plaintiff had a learning disability" instead of assisting Plaintiff to learn from the incident and improve. (Id.) Yet, several weeks later, Plaintiff alleges that Dr. Stacey Allen (another physician who was presumably associated with the program, although Plaintiff does not expressly so plead) submitted a positive performance evaluation. (See id. at ¶ 16.)

Next, on July 16, 2024, Plaintiff alleges that a disciplinary meeting occurred.[5] (Id. at ¶ 17.) During that meeting, Plaintiff claims a text message between Drs. Nagy and Manohar was reviewed (again, the FAC does not specify either doctors' full name or what disciplinary authority, but the Court assumes the Plaintiff meant to identify both as anesthesiologists at UTHSCSA). (Id. at ¶ 17.) Plaintiff alleges that the contents cast doubt on his ability to advance to the next step of residency program—CA-2. (See id.) Despite Plaintiff's repeated "verbal and written requests for feedback," Plaintiff claims he did not receive any feedback before being placed on probation at or shortly after the July 16 disciplinary meeting. (See id. at ¶ 18.)

Plaintiff then details several another instance where a UTHSCSA anesthesiologist, Dr. Shakal, reportedly gave him a poor review even though, according to Plaintiff, his "deliberate clinical decision . . . was consistent with accepted anesthetic judgment for a CA-2 resident." (Id. at ¶ 24; see also id.

[5] Dr. Castro does not specify who, or which entity, convened the meeting.

(alleging that Dr. Shakal's reaction to Plaintiff's "deliberate clinical decision" "lacked any legitimate educational or corrective purpose and instead constituted an act of harassment and intimidation, creating a hostile work environment").) Finally, Plaintiff contends that he was dismissed from UTHSCSA's anesthesiology residency program without the benefit of a full hearing or access to relevant documents in his file. (See id. at ¶¶ 25–35.)

III. Legal Allegations

Plaintiff's FAC pleads eight causes of action against all defendants. Count I alleges violations of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. (Dkt. # 3 at ¶¶ 37–57). Count II alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17. (Id. at ¶¶ 58–64.) Count III alleges discrimination under the Americans with Disabilities Act ("ADA"). (Id. at ¶¶ 65–76.) Count IV alleges due process violations under the Texas Constitution, art. I, § 19. (Id. at ¶¶ 77–103.) Count V alleges breach of express contract. (Id. at ¶¶ 104–18.) Count VI alleges breach of implied contract. (Id. at ¶¶ 119–29.) Count VII alleges negligence. (Id. at ¶¶ 130–42). And Count VIII alleges intentional infliction of emotional distress. (Id. at ¶¶ 143–55.) Plaintiff also applies for a temporary injunction under Texas law that would "enjoin Defendants and their agents from releasing, disseminating, or otherwise publicizing any school records, disciplinary records, or information regarding Plaintiff's dismissal from the residency program pending resolution of

the underlying litigation." (Id. at ¶ 157–63 (citing Tex. Civ. Prac. & Rem. Code § 65.011(1)).)

LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." When analyzing a motion to dismiss for failure to state a claim, the Court "accept[s] 'all well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d 343, 346 (5th Cir. 2013) (quoting In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)). The Court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011) (quoting Tellabs Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss. See

Twombly, 550 U.S. at 555–56; cf., e.g., Lowy v. Daniel Def., LLC, 167 F.4th 175, 193 (4th Cir. 2026) ("Plaintiffs are not required to prove their case in the complaint." (citation modified)).

In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action. See Twombly, 550 U.S. at 556–57. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (internal quotations and citations omitted). Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558 (citation omitted). However, "a motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" Turner v. Pleasant, 663 F.3d 770, 775 (5th Cir. 2011) (quoting Harrington v. State Farm Fire & Cas. Co., 563 F.3d 141, 147 (5th Cir. 2009)). And, when a 12(b)(6) motion is granted, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing

the action with prejudice. Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).

## DISCUSSION

At the outset, the Court notes that Plaintiff has conceded that sovereign immunity bars several of its claims. (See Dkt. # 11 at 6.) Accordingly, the Court **DISMISSES** Counts III, V, VI, VII, and VIII. See id. The following sections will analyze Counts I, II, and IV.

### I. Count I: Title VI Claim

In pertinent part, Title VI of the Civil Rights Act of 1964 states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Title VI, § 601, 78 Stat. 241, 252 (codified as amended at 42 U.S.C. § 2000d et seq.). "The essential elements of a Title VI claim are (1) there is race or national origin discrimination, and (2) the entity engaged in discrimination is receiving federal financial assistance." Washington v. Jackson State Univ., 532 F. Supp. 2d 804, 810 (S.D. Miss. 2006) (citing Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, 40 F.3d 698, 706 n. 9 (5th Cir.1994)).[6] In the context of Title VI actions against universities brought by

[6] Moreover, rules of decision controlling upon this Court and construing Title VI have recognized that a "Title VI plaintiff must prove discriminatory intent." Canutillo Indep. Sch. Dist. v. Leija, 101 F.3d 393, 397 (5th Cir. 1996); Alexander v. Sandoval, 532 U.S. 275, 280–81 (2001); see also Guardians Ass'n

graduate students, "a plaintiff must show that he is a member of a protected class, he suffered an adverse action at the hands of defendants in pursuit of his education, he was qualified to continue in pursuit of his education, and he was treated differently from similarly situated students who were not members of his protected class." Washington, 532 F. Supp. 2d at 810 (citing Bell v. Ohio St. Univ., 351 F.3d 240, 253 (6th Cir.2003)).[7]

Defendants assert that "Plaintiff's theory neglects to mention key facts, including (1) whether any of the administrators who dismissed him [from the UTHSCSA residency] program were even aware of his comments, and (2) that [Plaintiff] had experienced several performance-related issues starting more than a year prior." (Dkt. # 10 at 13.) Plaintiff offers no substantive response. (See generally Dkt. # 11.)

Here, Dr. Castro has pleaded that he experienced performance issues *before* any alleged retaliation or other adverse action for comments he made concerning Hispanic students' enrollment. (Compare Dkt. # 3 at ¶ 13 (referencing a performance-related issue in July 2023), with id. at ¶ 21 (alleging

---

v. Civil Serv. Comm'n, 463 U.S. 582, 608 n. 1 (1983) (Powell, J., concurring in the judgment) (observing that "[s]even Members of the Court agree that a violation of [Title VI] requires proof of discriminatory intent").

[7] Although the Plaintiff claims that "the residency program qualifies as both an academic curriculum and relationship," he pleads no additional facts to support that legal conclusion in his FAC. (See Dkt. # 3 at ¶84.) Accordingly, and because the Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions" it cannot accept this contention. See Plotkin, 407 F.3d at 696.

that Plaintiff's comments at a January 2025 meeting led to his dismissal from the program). Thus, the alleged longstanding performance issues that Plaintiff details within the four corners of his complaint, coupled with the general absence of any specific claim that anyone involved was his dismissal was motivated by those comments to dismiss Dr. Castro (much less *aware* of them), requires this Court to dismiss Plaintiff's Title VI claim under 12(b)(6). See Twombly, 550 U.S. at 570; cf. Government Employees, 40 F.3d at 706 n. 9; Leija, 101 F.3d at 397.

II. Count II: Title VII Claim

"Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). When a plaintiff claims that a defendant discriminated against him, and when that plaintiff pleads circumstantial evidence, like Dr. Castro does in his FAC, "the court can use the McDonnell Douglas framework as a helpful reference when determining whether a plaintiff has plausibly alleged the ultimate elements of her claim." Williams v. L3 Harris Techs., Inc., No. 3:24-CV-2443, 2025 WL 417456, at *2 (N.D. Tex. Feb. 6, 2025). The plaintiff must sufficiently allege that he (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." Harrison v. Brookhaven Sch. Dist., 82 F.4th 427, 429 (5th Cir. 2023) (citation

modified); see also Harrison v. Brookhaven Sch. Dist., 82 F.4th 427, 429 (5th Cir. 2023) (per curiam) (citing cases). And, perhaps most fundamentally, a plaintiff fails to make a prima facie case of retaliation when he does not allege that the defendant had knowledge of the defendant's protected activity. Seeu Manning v. Chevron, 332 F.3d 874, 883–84 (5th Cir. 2003).[8]

After careful consideration of the FAC, the Court concludes that Dr. Castro has not pleaded sufficient facts on all the ultimate issues. See Chhim, 836 F.3d at 470. Although the FAC and Plaintiff's Response in Opposition recite the elements of a Title VII violation, nowhere in Plaintiff's complaint does he allege that he "was treated less favorably than other similarly situated employees outside the protected group." Any "less favorabl[e]" treatment of Dr. Castro, going from the FAC alone, is alleged to come from supposed poor performance in the operating room. (See Dkt. # 3 at ¶ 13.) There is no allegation that the comments Plaintiff allegedly made about the lack of Hispanic students enrolled in the UTHSCSA anesthesiology program in any way affected his seemingly merit-based dismissal from the program. (See generally Dkt. # 3.)

[8] "[A] plaintiff need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." Raj v. La. State Univ., 714 F.3d 322, 331 (5th Cir. 2013) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510–12 (2002)). They must, however, "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible." Chhim v. Univ. of Tex. at Austin, 836 F.3d 467, 470 (5th Cir. 2016).

Thus, although motions like this one, which Defendant brings under Rule 12(b)(6), are "viewed with disfavor and . . . rarely granted," this case exemplifies why the Rule 12(b)(6) exists. Turner, 663 F.3d at 775 (citation modified). A plaintiff who, like Dr. Castro, fails to state a relief for which claim can be granted in his complaint, cannot advance to discovery. See, e.g., Twombly, 550 U.S. at 558 (justifying why deficiencies in pleadings should be "exposed at the point of minimum expenditure of time and money by the parties and the court").

III. Count IV: Due Process Claim

To begin, the Court notes that Plaintiff's claim arising under Article 19, Section 1 of the Texas Constitution sought to invoke the Court's supplemental jurisdiction. See 28 U.S.C. § 1367; Royal Canin U. S. A., Inc. v. Wullschleger, 604 U.S. 22, 31–32 (2025) (observing that "[§ 1367](c) explains that the supplemental jurisdiction just conferred is in some measure discretionary," and further that the "subsection provides that a district court 'may decline to exercise supplemental jurisdiction" in three specific situations: (1) if the supplemental claim "raises a novel or complex issue of State law; (2) if the supplemental claim 'substantially predominates' over the claims within the court's original jurisdiction; and (3) if the district court "has dismissed all claims over which it has original jurisdiction"). Thus, because the Court has dismissed all the claims over which it had original jurisdiction, it will heed the Royal Canin Court's advice and **DISMISS** Count IV. See 604 U.S. at 32–33

("[A]lthough supplemental jurisdiction persists, the district court need not exercise it . . . ."). Because the Court declines to exercise its discretionary supplemental jurisdiction, Plaintiff's request for equitable relief under Texas state law is also **DISMISSED**.

CONCLUSION

For the reasons above, Defendant's Motion to Dismiss (Dkt. # 10) is **GRANTED** and Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**. Attorney Bojazi's Motion to Withdraw (Dkt. # 16) is **GRANTED**. And Attorney Mactavish's Motion to Substitute Attorney (Dkt. # 19) is **GRANTED**. The Clerk is **DIRECTED** to **CLOSE** the case.

**IT IS SO ORDERED.**

**DATED**: San Antonio, Texas, September 10, 2026.

______________________________

David Alan Ezra
Senior United States District Judge